COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-112-CR
 
  
MARK 
ANDREW ELDRED                                                        APPELLANT
  
V.
   
THE 
STATE OF TEXAS                                                                  STATE
  
   
------------
 
FROM 
THE 362ND DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        In 
eight points, Appellant Mark Andrew Eldred appeals from his conviction of 
aggravated assault with a deadly weapon.  Following a jury trial on 
December 17, 2003, Appellant was found guilty.  He pled true to a sentence 
enhancement offense, and following a punishment hearing, the jury assessed his 
punishment at life imprisonment.  We will affirm.
Background 
Facts
        On 
December 8, 2002, Flower Mound police responded to a call reporting a stabbing 
at a party in a residential neighborhood.  Jason Taylor was the first 
officer to arrive at the house.  He immediately observed signs that a fight 
had occurred and noticed bloodstains near the house.  In order to preserve 
the crime scene, Officer Taylor told the twenty to thirty people who were at the 
house to go stand in the driveway.  When Detective Raymond Walker and 
Detective Misty Sparby arrived at the house, a witness told them that a stabbing 
had occurred and that there was a large amount of alcohol at the party.  
Taylor interviewed approximately ten people who were present at the party in an 
effort to discover what had happened.
        According 
to the testimony of the witnesses present at the party, Bret Taylor, the victim, 
was asked to arm wrestle by Dustin Rachal.  Many of the people present at 
the party were drinking or intoxicated, and somehow the arm wrestling match 
angered one or several individuals present and a fight erupted between the 
victim and Rachal.  The first punch was thrown by Jeremy Baxley, a friend 
of Rachal and Appellant, and the fight escalated into a brawl and traveled 
throughout the house.  Several people continued to attack Taylor throughout 
the fight.  At some point during the brawl, Appellant’s girlfriend, 
Christina Seal, was inadvertently hit in the nose causing it to bleed.  
Amanda Ciccarello, who was present at the party, testified that a male 
approached Seal after she had been hit and asked her who had hit her.  He 
responded that he was “going to f- - - - - - kill him.” Ciccarello stated 
that she went to the backyard where the victim was and that she saw this man hit 
the victim in the back a couple of times.  She also testified that she saw 
blood coming from the victim’s shirt as he tried to crawl through a hole in 
the fence to get away.  She testified that the person whom she saw 
attacking the victim had a tattoo on his forearm of a heart and a knife and that 
this person appeared to be more heavily tattooed than other people at the party.
        Taylor 
testified that he did not realize he had been stabbed until he was in his 
friend’s car.  He was taken to a Lewisville hospital and then transferred 
by Careflight to Parkland Hospital.  Taylor received six to seven stab 
wounds, three that were very serious.  Appellant was arrested and charged 
with aggravated assault with a deadly weapon.  He pled not guilty.  A 
jury found Appellant guilty and he was sentenced to life imprisonment.  
This appeal followed.
Jury Charge 
Error
        In 
point one, Appellant argues that the trial court erred by failing to charge the 
jury that it could consider evidence of an extraneous offense admitted at the 
guilt/innocence phase of the trial for limited purposes only.  Although 
Appellant references multiple offenses contained in the motion to revoke 
probation, the only offense mentioned during the guilt/innocence portion of the 
trial was during Detective Sparby’s testimony, and it concerned the 
retaliation offense.  The two other unadjudicated offenses of which 
Appellant complains were introduced during the punishment phase of the trial 
when the State introduced a pen packet containing documents pertaining to these 
unadjudicated offenses.
        To 
preserve a complaint for our review, a party must have presented to the trial 
court a timely request, objection, or motion that states the specific grounds 
for the desired ruling if they are not apparent from the context of the request, 
objection, or motion.  Tex. R. App. 
P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. 
App. 1998) (op. on reh’g), cert. denied, 526 U.S. 1070 (1999). Further, 
the trial court must have ruled on the request, objection, or motion, either 
expressly or implicitly, or the complaining party must have objected to the 
trial court’s refusal to rule.  Tex. 
R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. 
Crim. App. 2004).
        An 
extraneous offense limiting instruction must be requested at the time the 
evidence is introduced during the guilt/innocence phase.  Hammock v. 
State, 46 S.W.3d 889, 893-94 (Tex. Crim. App. 2001).  Otherwise, the 
evidence is admitted for all purposes.  Id. at 895; see also Tex. R. Evid. 105(a).  Appellant 
contends that part of the Detective Sparby’s testimony constituted evidence of 
the extraneous offense of retaliation, but Appellant did not object or request a 
limiting instruction at the time the testimony was given.  Consequently, 
the evidence was admitted for all purposes, and Appellant was not later entitled 
to a contemporaneous limiting instruction.  See Hammock, 46 S.W.3d 
at 895.  We hold that Appellant has not preserved anything for our 
review.  Point one is overruled.
        Appellant 
argues in his second point that the trial court erred by failing to instruct the 
jury during the punishment phase of the trial that it could not consider 
extraneous offenses unless they were proven beyond a reasonable doubt.  
Appellant did not object to the jury charge nor did he request a limiting 
instruction on the extraneous offense evidence.
        Evidence 
of extraneous offenses may not be considered in assessing punishment until the 
factfinder is satisfied beyond a reasonable doubt that such offenses are 
attributable to the defendant.  Huizar v. State, 12 S.W.3d 479, 484 
(Tex. Crim. App. 2000) (op. on reh’g).  Once the factfinder is satisfied 
beyond a reasonable doubt that such offenses are attributable to the defendant, 
the factfinder may use the extraneous offense evidence however it chooses in 
assessing punishment.  Id.  The reasonable doubt standard set 
out in article 37.07, section 3(a) of the code of criminal procedure is “law 
applicable to the case,” and thus the jury must be instructed on the burden of 
proof when the State introduces evidence of extraneous bad acts at the 
punishment phase of the trial.  Id. at 484.  Failure to sue 
sponte give a reasonable doubt instruction at punishment regarding 
extraneous offense evidence may be error subject to the Almanza harm 
analysis.  Ellison v. State, 86 S.W.3d 226, 227-28 (Tex. Crim. App. 
2002); Huizar, 12 S.W.3d at 484-85.  Because Appellant did not 
object at trial to the error in the court’s charge, we must decide whether the 
error was so egregious and created such harm that Appellant did not have a fair 
and impartial trial—in short, that “egregious harm” has occurred.  Almanza 
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g); see 
Tex. Code Crim. Proc. Ann. art. 
36.19 (Vernon 1981) (providing the manner for appellate review for jury charge 
error); Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) 
(holding that if jury charge error occurs the court must determine if the error 
causes sufficient harm to warrant reversal).
        In 
making this determination, “the actual degree of harm must be assayed in light 
of the entire jury charge, the state of the evidence, including the contested 
issues and weight of probative evidence, the argument of counsel and any other 
relevant information revealed by the record of the trial as a whole.”  Almanza, 
686 S.W.2d at 171; see generally Hutch, 922 S.W.2d at 172-74.  The 
purpose of this review is to illuminate the actual, not just theoretical, harm 
to the accused.  Almanza, 686 S.W.2d at 174. Egregious harm is a 
difficult standard to prove and must be determined on a case-by-case 
basis.  Ellison, 86 S.W.3d at 227; Hutch, 922 S.W.2d at 171.
        Two 
other unadjudicated offenses were introduced during the punishment phase when 
the State, without objection, introduced a pen packet that contained court 
documents including final judgments and the two unadjudicated offenses of 
aggravated assault and attempted theft.  The State acknowledges that no 
reasonable doubt instruction was given sua sponte by the trial court 
regarding the challenged extraneous offenses.  However, the State asserts 
that Appellant was not egregiously harmed by the lack of the instruction.  
We agree.
        Here, 
the failure to include a “reasonable doubt” standard in the jury charge was 
not so egregious that Appellant failed to receive a fair and impartial 
trial.  The complained-of offenses were contained in a fifty-four page 
exhibit offered by the State.  The State introduced no additional evidence 
regarding the allegations contained in the pen packets; furthermore, the State 
did not orally mention any of the complained-of offenses during the State’s 
closing argument.  The only method whereby the jury would have been 
informed of the extraneous offenses at issue is upon a careful reading of the 
fifty-four page exhibit of pen packets.  Given the short deliberation time 
of the jury, there is nothing in the record to indicate that the focus during 
the punishment phase was on those particular pages of the pen packet containing 
the offenses.
        Based 
on our review of the entire record of Appellant’s trial, including the charge, 
the state of the evidence, the contested issues, the range of punishment, the 
weight of the probative evidence, the arguments of counsel, and all relevant 
information revealed by the record of the trial as a whole, we are unable to 
conclude that the trial court’s error in failing to instruct the jury in the 
punishment phase charge concerning the extraneous offenses is so egregious and 
created such harm that Appellant did not receive a fair and impartial 
trial.  See Almanza, 686 S.W.2d at 171.  We overrule 
Appellant’s second point.
        In 
point three, Appellant complains that the trial court erred by failing to 
instruct the jury that a plea of true to an allegation in the motion to revoke 
probation or the motion to adjudicate guilt does not constitute proof beyond a 
reasonable doubt that he committed the offenses alleged.  However, the 
State calls our attention to the fact that there is no “plea of true” 
contained in the language of the motions.  Furthermore, Appellant 
acknowledges in his brief that “it is not clear” whether Appellant pled true 
to these allegations. Indeed, a careful review of the record by this court does 
not indicate that Appellant actually pled true to these allegations.  The 
judgments merely state that the court found that Appellant had violated the 
terms and conditions of his probation.  Therefore, we need not further 
address Appellant’s complaint.  We overrule Appellant’s third point.
Admission of 
Extraneous Offense Evidence
        In 
points four, five, and six, Appellant raises additional points related to the 
three extraneous acts discussed previously.  In point four, Appellant 
claims that the trial court erred by failing to determine the threshold 
admissibility of the unadjudicated offenses before admitting them into 
evidence.  In point five, Appellant argues that the evidence was not 
sufficient to show that Appellant committed the extraneous offenses beyond a 
reasonable doubt.  In point six, Appellant argues that he was denied due 
process because he was sentenced based on untrue or unreliable information 
regarding the extraneous offenses.
        An 
appellate court reviews the trial court’s decision to admit extraneous offense 
evidence under an abuse of discretion standard.  Mitchell v. State, 
931 S.W.2d 950, 953 (Tex. Crim. App. 1996).  We point out that Appellant 
couches his fifth point in terms of legal sufficiency, and a challenge to the 
legal sufficiency of the evidence supporting a conviction cannot be forfeited 
for failure to object at trial.  See Moff v. State, 131 S.W.3d 485, 
490 (Tex. Crim. App. 2004).  However, when an appellant complains on appeal 
of the sufficiency of the evidence of an extraneous offense at punishment, his 
complaint is not truly about sufficiency.  Rather, his complaint goes to 
the admission of the evidence.  See Malpica v. State, 108 S.W.3d 
374, 378-79 (Tex. App.—Tyler 2003, no pet.).  That is, Appellant’s 
complaint on appeal is a claim of evidentiary trial error—a complaint that can 
be forfeited for the failure to object at trial.  See Moff, 131 
S.W.3d at 490.  Because the verdict on a non-capital case is a general 
verdict, an appellate court is unable to determine whether a jury actually 
considered the extraneous conduct evidence or if it affected the jury’s 
determination of punishment.  Thompson v. State, 4 S.W.3d 884, 886 
(Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).  Therefore, we do not 
review the sufficiency of the evidence of the extraneous offense to support the 
jury’s assessment of punishment.  We construe Appellant’s complaint as 
a challenge to the admission of the extraneous offense evidence.
        To 
preserve a complaint for our review, a party must have presented to the trial 
court a timely request, objection, or motion that states the specific grounds 
for the desired ruling if they are not apparent from the context of the request, 
objection, or motion. Tex. R. App. P. 33.1(a)(1); Mosley, 
983 S.W.2d at 265.  Further, the trial court must have ruled on the 
request, objection, or motion, either expressly or implicitly, or the 
complaining party must have objected to the trial court’s refusal to 
rule.  Tex. R. App. P. 
33.1(a)(2); Mendez, 138 S.W.3d at 341.
        Here, 
Appellant stipulated that he was the person identified in the pen packets 
offered by the State and made no objection when the documents were offered into 
evidence.[2]   Furthermore, he did not 
object that the extraneous offense evidence contained in the pen packets was 
unreliable or that the evidence was legally insufficient to establish assault or 
theft.  Because Appellant failed to object at trial, he has not preserved 
his complaints for appellate review.  We overrule Appellant’s fourth, 
fifth, and sixth points.
Ineffective 
Assistance of Counsel
        In 
his seventh point, Appellant claims he was denied effective assistance of 
counsel.  We apply a two-pronged test to ineffective assistance of counsel 
claims.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 
2052, 2064 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 
1999).  First, Appellant must show that his counsel's performance was 
deficient; second, Appellant must show that the deficient performance prejudiced 
the defense.  Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Hernandez 
v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).
        In 
evaluating the effectiveness of counsel under the first prong, we look to the 
totality of the representation and the particular circumstances of each 
case.  Thompson, 9 S.W.3d at 813.  The issue is whether 
counsel's assistance was reasonable under all the circumstances and prevailing 
professional norms at the time of the alleged error.  See Strickland, 
466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed 
to have rendered adequate assistance and made all significant decisions in the 
exercise of reasonable professional judgment.”  Id. at 690, 104 S. 
Ct. at 2066.  An allegation of ineffective assistance must be firmly 
founded in the record, and the record must affirmatively demonstrate the alleged 
ineffectiveness.  Thompson, 9 S.W.3d at 813.  A defendant bears 
the burden to prove ineffectiveness of counsel and must overcome a presumption 
that the challenged actions might be considered sound trial strategy—and that 
burden is difficult when, as here, the defendant did not file a motion for new 
trial asserting ineffectiveness of counsel.  Brown v. State, 155 
S.W.3d 625, 631 (Tex. App.—Fort Worth 2004, pet. ref’d).  Our scrutiny 
of counsel's performance must be highly deferential, and every effort must be 
made to eliminate the distorting effects of hindsight.  Strickland, 
466 U.S. at 689, 104 S. Ct. at 2065.
        The 
second prong of Strickland requires a showing that counsel's errors were 
so serious that they deprived the defendant of a fair trial, i.e., a trial whose 
result is reliable.  Id. at 687, 104 S. Ct. at 2064.  In other 
words, Appellant must show there is a reasonable probability that, but for 
counsel's unprofessional errors, the result of the proceeding would have been 
different.  Id. at 694, 104 S. Ct. at 2068.  A reasonable 
probability is a probability sufficient to undermine confidence in the 
outcome.  Id. The ultimate focus of our inquiry must be on the 
fundamental fairness of the proceeding whose result is being challenged.  Id. 
at 697, 104 S. Ct. at 2070.
        In 
the present case, Appellant contends that he received ineffective assistance of 
counsel because his trial counsel 1) failed to request notice of extraneous 
offenses to be used by the State during the guilt/innocence and punishment 
portions of trial, 2) failed to object to hearsay testimony, 3) failed to 
request limiting instructions during the guilt/innocence phase of the trial, 4) 
failed to request reasonable doubt instructions during the punishment phase, 5) 
failed to object to the portions of the pen packets that contained the 
extraneous unadjudicated offenses, 6) failed to request that the trial court 
make a threshold determination of admissibility concerning the offenses, 7) 
failed to object to the extraneous offenses during the punishment phase, and 8) 
failed to request a record of the jury voir dire.
        Here, 
Appellant’s ineffective assistance of counsel claim fails because the record 
is devoid of evidence regarding trial counsel’s reasons or strategy concerning 
the challenged actions.  By not seeking those explanations, Appellant has 
failed to overcome the presumption that the challenged actions were sound trial 
strategy.  See Thompson, 9 S.W.3d at 812.  Because Appellant 
failed to meet his burden under Strickland, we overrule his seventh 
point.
Legal and 
Factual Sufficiency
        In 
Appellant’s eighth point, he complains that the evidence was legally and 
factually insufficient to support the verdict.  Specifically, he asserts 
that the evidence was insufficient to prove that he was the person who stabbed 
the victim, Bret Taylor.
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004).  This standard gives full play to the 
responsibility of the trier of fact to resolve conflicts in the testimony, to 
weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.  
The trier of fact is the sole judge of the weight and credibility of the 
evidence.  See Tex. Code 
Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 34 
S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal 
sufficiency review, we may not re-evaluate the weight and credibility of the 
evidence and substitute our judgment for that of the fact finder.  Dewberry 
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in 
favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. 
Crim. App. 2000).
        In 
contrast, when reviewing the factual sufficiency of the evidence to support a 
conviction, we are to view all the evidence in a neutral light, favoring neither 
party.  See Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 
2004).  The only question to be answered in a factual sufficiency review is 
whether, considering the evidence in a neutral light, the fact finder was 
rationally justified in finding guilt beyond a reasonable doubt.  Id. 
at 484.  There are two ways evidence may be factually insufficient: 1) the 
evidence supporting the verdict or judgment, considered by itself, is too weak 
to support the finding of guilt beyond a reasonable doubt; or 2) when there is 
evidence both supporting and contradicting the verdict or judgment, weighing all 
of the evidence, the contrary evidence is so strong that guilt cannot be proven 
beyond a reasonable doubt.  Id. at 484-85.  “This standard 
acknowledges that evidence of guilt can ‘preponderate’ in favor of 
conviction but still be insufficient to prove the elements of the crime beyond a 
reasonable doubt.”  Id. at 485.  In other words, evidence 
supporting a guilty finding can outweigh the contrary proof but still be 
insufficient to prove the elements of an offense beyond a reasonable 
doubt.  Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses.  Id. at 481; Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment 
for that of the fact finder’s.  Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the 
evidence.  Id. at 484, 486-87.  An opinion addressing factual 
sufficiency must include a discussion of the most important and relevant 
evidence that supports the appellant’s complaint on appeal.  Sims v. 
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
        In 
the instant case, several witness testified regarding the events that occurred 
on the night of the stabbing.  Dustin Rachal, Jeremy Baxley, and Melissa 
Baxley all testified that Appellant said that he had stabbed someone.  
Specifically, Rachal stated that after the fight, he and several others drove to 
the home of Christina Seal’s mother.  Afterwards, Appellant and Seal, his 
girlfriend, arrived.  Rachal testified that Appellant took a knife out of 
his pocket that had red spots on it and said, “Dude, I just stabbed that 
guy.”  Baxley also testified that he heard Appellant say that he 
“stabbed that fool.”  Finally, Melissa Baxely stated that she also went 
to Seal’s house after the fight and heard Appellant say, “I had to stab 
somebody.”
        Furthermore, 
Appellant was identified as wearing a tan-colored sweater and white hat at the 
party.  There was also testimony that Appellant had various tattoos on his 
body.  Joshua Landry testified that the tattoos pictured in State’s 
exhibits 13, 14, 15, and 16 were the type he saw on the man who stabbed the 
victim, but Landry could not identify any specific tattoos.   Richard 
Goodman testified that during the fight the man who was wearing the tan-colored 
sweater came into the backyard, yelling, “Who hit my girl in the 
face?”  The man joined the fight, and Goodman specifically identified 
tattoos in State’s exhibits 13 and 16 as tattoos this man had.  Goodman 
stated that he never saw a knife, but that after the fight stopped, the man with 
the tattoos said, “You keep messing with me, I’m going to slit your 
throat.”  Tara Rice testified that she saw Seal after Seal was injured at 
the party.  Rice stated that she saw Seal walking down a hallway saying, 
“Stop him, stop him.  He has a knife, he has a knife.  He’s going 
to kill him.”
        The 
jury, as fact finder, was entitled to judge the credibility of the witnesses and 
could have chosen to believe all, some, or none of the testimony 
presented.  See Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. 
App. 1991); see also Zuniga, 144 S.W.3d at 481.  Therefore, it was 
entirely within the province of the jury to believe or disbelieve all, some, or 
none of Rachal’s, Jeremy Baxley’s, Melissa Baxley’s, Landry’s, 
Goodman’s and Rice’s testimony.  See Chambers, 805 S.W.2d at 
461.  Thus, viewing the evidence in the light most favorable to the 
verdict, we hold that a rational trier of fact could have found that Appellant 
was the person who stabbed Bret Taylor.  Jackson, 443 U.S. at 
319.  Furthermore, viewing all the evidence in a neutral light, favoring 
neither party, we also conclude that the evidence supporting the verdict, taken 
alone, is not too weak to support the finding of guilt beyond a reasonable doubt 
and that the contrary evidence is not so strong that guilt cannot be proven 
beyond a reasonable doubt.  Zuniga, 144 S.W.3d at 481.  
Accordingly, we hold that the evidence is both legally and factually sufficient 
to support Appellant’s conviction for aggravated assault with a deadly 
weapon.  We overrule Appellant’s eighth point.
Conclusion
        Having 
overruled Appellant’s eight points on appeal, we affirm the trial court’s 
judgment.
  
   
                                                                  PER 
CURIAM
   
   
PANEL 
A: HOLMAN, J.; CAYCE, C.J.; and SAM J. DAY, J. (Retired, Sitting by Assignment)
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
July 7, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
We recognize that the reporter’s record states that “Defense will stipulate 
and allow now [sic] objection on that, your Honor.”  However, a complete 
reading of the record indicates that Appellant did not object to the admission 
of the pen packets contained in State’s exhibit 69.